1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HENRY THOMAS,<br><br>                              Plaintiff,<br><br>v.<br><br>THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, AGULAR, JOHN DOE 1, and JOHN DOE 2,<br><br>                              Defendants. | Case No.: 3:22-cv-00979-RSH-DEB<br><br>**ORDER:**<br><br>**GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2];**<br><br>**DISMISSING ALL DEFENDANTS EXCEPT AGULAR AND JOHN DOE 2 UNDER 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b); and**<br><br>**GRANTING PLAINTIFF LEAVE TO AMEND HIS COMPLAINT [ECF No. 1] OR PROCEED AS TO DEFENDANTS AGULAR AND JOHN DOE 2 ONLY.** |

    Plaintiff William Henry Thomas is currently incarcerated at Folsom State Prison and filed a *pro se* civil rights action alleging three counts under 42 U.S.C. § 1983. *See* Compl., ECF No. 1. Thomas's three counts are based on alleged violations of his Eighth Amendment protection against cruel and unusual punishment. Because correctional

officers at Calipatria State Prison did not fix the only toilet in his prison cell, Thomas claims he was forced to urinate in a soda can and wallow in the stench of his own feces for at least 17 days. Thomas seeks compensatory and punitive damages, as well as injunctive relief.

Plaintiff did not prepay the required civil filing fee. He instead filed a Motion to Proceed *In Forma Pauperis* ("IFP") under 28 U.S.C. § 1915(a). *See* IFP App., ECF No. 2. As explained below, the Court grants Thomas's IFP Motion, dismisses certain defendants from this case, and grants Thomas the option of either filing a notice with the Court stating that he wants to proceed with his remaining claims only or amending his Complaint within forty-five (45) days from the date of this Order.

## I. IFP Motion

### A. Legal Standard

When someone files a lawsuit (other than a writ of habeas corpus) in a federal district court, the filer must pay a fee of $350. *See* 28 U.S.C. § 1914(a).[1] A court may waive this fee by granting a party IFP status under 28 U.S.C. § 1915(a)(1). *See, e.g.*, *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

However, under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 801, 110 Stat. 1321 (1996), a prisoner who is granted IFP status must still pay the full filing fee in "increments" or "installments[.]" *Bruce v. Samuels*, 577 U.S. 82, 83–84 (2016); *see Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015). In fact, the PLRA requires courts to charge a prisoner granted IFP status the full filing fee, even if the courts ultimately dismiss the prisoner's lawsuit. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

To request IFP status, a party must file an affidavit that: (1) includes a complete statement of assets, (2) demonstrates that the party is unable to pay the filing fee, (3)

---

[1] The Court also charges an additional $52 administrative fee, which does not apply to plaintiffs with IFP status. *See* CivLR 4.5.

provides the nature of the action, and (4) states that the party is entitled to redress. 28 U.S.C. § 1915(a)(1). The PLRA requires prisoners seeking IFP status to also file a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." *Id*. § 1915(a)(2); *see* CivLR 3.2; *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).

Once a party files an IFP application, it is within the court's discretion to grant or deny the request. *Venerable v. Meyers*, 500 F.2d 1215, 1216 (9th Cir. 1974) (citations omitted). However, if the IFP applicant is a prisoner and unable to pay the filing fee, the law requires courts to examine the prisoner's certified trust account statement and assess an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months — whichever is greater. *See* 28 U.S.C. § 1915(b)(1). Regardless, a court may not prohibit a prisoner from filing a lawsuit solely because the prisoner has no assets to pay the initial filing fee. *Id*. § 1915(b)(4).

After a court assesses (or waives) the initial payment amount, the institution having custody of the prisoner then collects and forwards subsequent payments to the court until the entire filing fee is paid. *Id*. § 1915(b)(2). The subsequent payments are set at 20% of the prisoner's preceding month's income for any month in which the prisoner has a balance of more than $10 in their account. *Id*.; *see also Bruce*, 577 U.S. at 84.

**B. Analysis**

Thomas's IFP request is complete. His IFP Motion and signed declaration accompany his Complaint and include a statement of assets, a statement that Thomas is unable to pay the filing fee or provide security, a statement that Thomas believes he is entitled to redress, a signed prison certificate from an Accounting Officer at Folsom State Prison, and a certified trust account statement for the six months before he filed his Complaint. *See* ECF No. 2. Thomas reports no assets other than his prisoner trust account. *See id*. During the six months before filing his Complaint, Thomas's average monthly trust account balance was $22.40 with an average monthly deposit of $5.55. *See id*. at 4.

However, Thomas had an available balance of only $0.08 in his account when he filed his Complaint. *See id.* at 4.

Therefore, the Court grants Thomas's IFP Motion, ECF No. 2. The Court would assess Thomas an initial partial payment of $1.11 per 28 U.S.C. § 1915(b)(1)(A), but the Court can only assess an initial partial filing fee of $0.08 due to his account balance. *See* 28 U.S.C. § 1915(b)(4); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The Court directs the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), or her designee, to collect an initial partial payment of $0.08 only if sufficient funds are available in Thomas's account at the time this Order is executed. The Court further directs the Secretary of the CDCR, or her designee, to collect and forward to the Clerk of the Court the remaining balance of the $350 filing fee set in 28 U.S.C. § 1914, under an installment payment plan consistent with 28 U.S.C. § 1915(b)(1).

## II. Screening Under 28 U.S.C. §§ 1915(e)(2)(B) & 1915A

### A. Legal Standards

#### 1. <u>Pre-Answer Screening</u>

Because Thomas is a prisoner with IFP status and Defendants are officers or employees of a governmental entity, provisions in the PLRA require the Court to screen Thomas's Complaint before requiring Defendants to answer. 28 U.S.C. §§ 1915(e)(2), 1915A(b); *see Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)). These sections of the PLRA require a court to dismiss a prisoner plaintiff's complaint (or any portion of it) that is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez*, 203 F.3d at 1126–27. "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th

Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim for relief under which one can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the [Federal Rule of Civil Procedure ("Rule") 12(b)(6)] standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.* Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

Complaints must also comply with Rule 8, which requires that each pleading include a "short and plain statement of the claim" and "each allegation [] be simple, concise and direct." Fed. R. Civ. P. 8(a)(2), 8(d)(1). *See Iqbal*, 556 U.S. at 677–78. If a complaint fails to provide the defendant fair notice of the wrongs allegedly committed, a district court may dismiss the complaint for failing to comply with Rule 8. *See Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (citing cases upholding Rule 8 dismissals where pleadings were "verbose," "confusing," "distracting, ambiguous, and unintelligible," "highly repetitive," and comprised of "incomprehensible rambling").

Finally, courts should be mindful that "where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). But *pro se* parties "should not be treated more favorably than parties with attorneys of record . . . ." *Albanese v. Las Vegas Metro. Police*

*Dep't*, No. 217-CV-01600, 2017 WL 2622759, at *2 (D. Nev. June 15, 2017) (quoting *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986)).

### 2. 42 U.S.C. § 1983

Thomas asserts three causes of action under 42 U.S.C. § 1983. "Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### 3. The Eighth Amendment

Thomas premises his three Section 1983 counts on alleged violations of his rights under the Eighth Amendment. The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual" punishment of a person convicted of a crime. U.S. Const. amend. VIII. *See Rhodes v. Chapman*, 452 U.S. 337, 345 (1981).[2] "Underlying the Eighth Amendment is a fundamental premise that prisoners are not to be treated as less than human beings." *Spain v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979). Indeed, "[w]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being . . . ." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989)). Therefore, "the Eighth Amendment's protection against cruel and unusual punishment still retains its 'full force' behind prison doors." *Madrid v. Gomez*, 889 F. Supp. 1146, 1244–45 (N.D. Cal. 1995) (citations omitted); *see Hutto v. Finney*, 437 U.S. 678, 685 (1978) ("Confinement in a

---

[2] The Fourteenth Amendment to the U.S. Constitution incorporates the Eighth Amendment and makes it applicable to the states. *See Robinson v. California*, 370 U.S. 660, 667 (1962).

prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards.").

"The Eighth Amendment prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Although a prisoner's conditions of confinement may be restrictive and harsh, they cannot involve the "wanton and unnecessary infliction of pain" or be devoid of a legitimate penological purpose. *Id*. (citing *Rhodes*, 452 U.S. at 347; *Hudson v. Palmer*, 468 U.S. 517, 548 (1984)).

"Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "As an aspect of 'sanitation,' plumbing is a basic Eighth Amendment concern." *Toussaint v. McCarthy*, 597 F. Supp. 1388, 1409 (N.D. Cal. 1984), *aff'd in part, rev'd in part*, 801 F.2d 1080 (9th Cir. 1986); *see Martino v. Carey*, 563 F. Supp. 984, 999 (D. Or. 1983) ("Functioning plumbing, including toilets, sinks and showers, is a basic necessity of civilized life."). Accordingly, "[t]he provision of adequate means of hygiene, and the sanitary disposal of bodily wastes so that the wastes do not contaminate the cells, are constitutionally required." *Martino*, 563 F. Supp. at 999 (citations omitted) (finding Eighth Amendment violation where "plumbing . . . at the jail has allowed feces, urine and vomit to overflow from the toilets into the cells on a regular basis.").

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious,' a prison official's act or omission must result in the denial of 'the minimum civilized measure of life's necessities . . . .'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Second, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind,'" and act with "'deliberate indifference' to inmate health or safety . . . ." *Farmer*, 511 U.S. at 834 (quoting *Wilson*,

501 U.S. at 302–03). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 834.

### i. The Objective Component

A plaintiff must first show that the alleged deprivation was objectively "sufficiently serious" to rise to the level of an Eighth Amendment violation. *Farmer*, 511 U.S. at 834 (citing *Wilson*, 501 U.S. at 298); *see Johnson*, 217 F.3d at 731. When evaluating the alleged deprivation, a court must consider the circumstances, nature, and duration of the deprivation. *Johnson*, 217 F.3d at 731–32. "The more basic the need, the shorter the time it can be withheld." *Id*. at 731. Unrelated conditions of confinement cannot in combination amount to a constitutional violation unless they have a mutually reinforcing effect that produces a deprivation of a single, identifiable human need. *Wilson*, 501 U.S. at 304.

### ii. The Subjective Component

An Eighth Amendment claim also requires a plaintiff to show that the prison official acted with a "sufficiently culpable state of mind" — "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("the inmate must show that the prison officials had no 'reasonable' justification for the deprivation"). Negligence is insufficient to establish liability. *Farmer*, 511 U.S. at 835. The prison official must have demonstrated "deliberate indifference." *Id*.

However, the "subjective standard does not invite prison supervisors to bury their heads in the sand." *Manning v. Kelly*, No. 1:12-CV-01621, 2017 WL 3284798, at *6 (E.D. Cal. Aug. 2, 2017) (quoting *Walton v. Dawson*, 752 F.3d 1109, 1119 (8th Cir. 2014)). A plaintiff may show "that a prison official had the requisite knowledge of a substantial risk in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. A fact finder may also conclude that an official knew of a substantial risk from the fact that the risk was obvious. *Id*. at 843 n.8. Therefore, a prison official can be liable under the Eighth Amendment "if the evidence showed that [a prison official] merely refused to

1    verify underlying facts that he strongly suspected to be true, or declined to confirm
2    inferences of risk that he strongly suspected to exist." *Id*.

3    **B. Analysis**

4        In his Complaint, Thomas asserts three causes of action under 42 U.S.C. § 1983
5    against four Defendants: (1) the California Department of Corrections and Rehabilitation
6    ("CDCR"); (2) Correctional Officer "Agular"; (3) Correctional Officer John Doe 1; and
7    (4) Correctional Officer John Doe 2.[3] *See* ECF No. 1. Thomas claims that all three Section
8    1983 claims are based on alleged violations of his Eighth Amendment protection against
9    cruel and unusual punishment because he was placed in "unhuma[ne] and cruel" conditions
10   while incarcerated at Calipatria State Prison. *Id*. at 5. Specifically, the CDCR Form 602-1
11   Thomas attached to his Complaint explains:

12           I have been complaining of a plum[b]ing problem since or
13           around Dec 20, 2021 . . . . [O]n Dec 26 a day after Christmas my
14           toilet stop flushing altogether I talk to the floor staff on 2nd watch
15           and the tower officer who claimed he put in a work order. I have
16           been forced to urin[ate] in a soda can and po[u]r[] the urin[e] in
17           my sink since Dec 26, 2021 I have had fe[ce]s in my toilet, since
18           Dec 27 The smell is given me migrain[e]s and breathing
19           trouble . . . . This is along the lines of cruel and unusual
20           punishment and is a Health hazard . . . .

21

22

23
     _____

24   [3] "As a general rule, the use of 'John Doe' to identify a defendant is not favored. However,
25   situations arise, such as the present, where the identity of alleged defendants will not be
     known prior to the filing of a complaint. In such circumstances, the plaintiff should be
26   given an opportunity through discovery to identify the unknown defendants, unless it is
     clear that discovery would not uncover the identities, or that the complaint would be
27   dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)
28   (citations omitted).

1    ECF No. 1 at 11. As a result of his alleged harm, Thomas requests an "injunction preventing

2    defendant(s): from not being held accountable" and $80,000 in damages, attorney's fees,

3    and court fees. *Id*. at 7.[4]

4    First, the Court must address if Thomas's alleged deprivation is objectively

5    "sufficiently serious" to rise to the level of an Eighth Amendment violation. *Farmer*, 511

6    U.S. at 834. Although a temporary deprivation of access to a toilet generally does not

7    amount to a sufficiently serious deprivation, courts have found more prolonged

8    deprivations violate the Eighth Amendment. *Compare Kanvick v. Nevada*, 3:08-CV-

9    00397, 2010 WL 2162324, at *1, 5–6 (D. Nev. Apr. 27, 2010) (finding "a temporary

10   deprivation of access to toilets" lasting up to two hours "does not rise to the level of an

11   Eighth Amendment violation"), *with Jordan v. Fitzharris*, 257 F. Supp. 674, 677 (N.D.

12   Cal. 1966) (finding Eighth Amendment violation where prisoner was placed in cell that

13   was not cleaned regularly, had no means to clean himself, and had a hole for receiving

14   bodily wastes but no flushing mechanism). Indeed, the Supreme Court reversed the Fifth

15   Circuit Court of Appeals' decision to grant prison correctional officers qualified immunity

16   from a Section 1983 claim based on the Eighth Amendment because "'[t]he law wasn't

17   clearly established' that 'prisoners couldn't be housed in cells teeming with human waste'

18   'for only six days,' . . . ." *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (per curiam) (quoting

19   *Taylor v. Stevens*, 946 F.3d 211, 222 (5th Cir. 2019)). In doing so, the Supreme Court

20   noted, "any reasonable officer should have realized that [plaintiff's] conditions of

21

22   _____

23   [4] Thomas claims that he exhausted all administrative remedies available to him. ECF No.
     1 at 6. But it is not clear if the CDCR Office of Appeals responded to Thomas' Form 602-
24   3, which is necessary to exhaust all administrative remedies available to him under Title
     15 of California's Code of Regulations § 3485(l). Thomas does not have to allege
25   exhaustion. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) ("failure to exhaust is an
     affirmative defense . . . inmates are not required to specially plead or demonstrate
26   exhaustion in their complaints."). However, if Thomas has not exhausted all available
     administrative remedies, Defendants can raise the failure to exhaust as an affirmative
27   defense later in litigation. *See Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc).

28

confinement offended the Constitution." *Id*. at 54; *see Young v. Quinlan*, 960 F.2d 351, 365 (3d Cir. 1992) ("It would be an abomination of the Constitution to force a prisoner to live in his own excrement for four days in a stench that not even a fellow prisoner could stand."). Therefore, the Court finds that Thomas's allegation of being deprived of a flushable toilet for at least 17 days to be an objectively "sufficiently serious" deprivation rising to the level of an Eighth Amendment violation. *See Toussaint*, 597 F. Supp. at 1409 ("The evidence established that the plumbing in most if not all of the units housing lockup inmates at San Quentin and Folsom is grossly inadequate. In fact, the leaking pipes and fixtures, clogged drains, rotting sewer lines, and other plumbing and sewage deficiencies are a major cause of the serious health hazards prevalent in lockup units of the two prisons. These conditions are inconsistent with human decency, and violate the Eighth Amendment.").

However, because the Court's analysis of a defendant's liability "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation[,]" the Court evaluates the allegations as to each Defendant below. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *see Est. of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999), as amended (Dec. 9, 1999) ("Causation is, of course, a required element of a § 1983 claim.").

### 1. Defendant Agular

Taking his allegations as true and viewing them in the most favorable light, Thomas sufficiently alleges that CDCR Correctional Officer Agular knew of the conditions of Thomas's cell and acted (or failed to act) with "deliberate indifference."

Thomas alleges on or around December 20, 2021, he complained about the plumbing in his cell to Agular. ECF No. 1 at 3. Thomas explained that his toilet would flush two times an hour, although sometimes even those two flushes "wouldn't flush everything" and Thomas would have to wait another hour to try again. *Id*. Agular replied that he would "put a work order in." *Id*.

By December 26, 2021, Thomas's toilet had not been repaired and "stopped working altogether." *Id*. Thomas asked Agular to call emergency plumbing. *Id*. Agular replied that he could not do that and would put in another work order. *Id*. Thomas asked to speak with Agular's Sergeant or Lieutenant, but Agular responded that his supervisor was "busy" and told Thomas "for now you need to lock down." *Id*.

After eight days without a working toilet in his cell, Thomas approached Agular on January 3, 2022, to ask about the plumber. *Id*. Agular instructed Thomas to wait and ask the plumber about the repair the next time Thomas saw the plumber. *Id*. Thomas explained that he already saw the plumber three times, but the plumber would not enter Thomas's cell without a work order due to COVID-19 precautions. *Id*. Thomas told Agular that Thomas's cell "smell[ed] like a porter potty[.]" *Id*. Agular laughed at Thomas. *Id*. Thomas informed Agular that he would file a written grievance and Agular answered, "go ahead." *Id*.

If true, Thomas's allegations demonstrate that Defendant Agular — while working as a CDCR correctional officer — learned of the conditions of Thomas's cell and acted (or failed to act) with deliberate indifference. *See Swan v. United States*, 159 F. Supp. 2d 1174, 1182 (N.D. Cal. 2001) ("Turning a blind eye to the relevant surrounding facts will not shield a prison official from liability."). Therefore, the Court finds Thomas's allegations against Agular sufficient to survive the "low threshold" for screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F. 3d at 1123.

### 2. Defendant John Doe 1

Thomas does not sufficiently allege that CDCR Correctional Officer John Doe 1 caused Thomas a deprivation that violated the Eighth Amendment, much less does Thomas allege that Doe 1 caused Thomas's deprivation with "deliberate indifference."

At best, Thomas alleges that he complained about the plumbing in his cell to Doe 1 and asked if he could "be moved to a different cell until the cell was fixed in Building 4-111." ECF No. 1 at 4. Doe 1 replied that not only did Agular "put a work order in[,]" but also it would be at least 2 weeks before Thomas could move cells because the prison moved

inmates only every other week. *Id*. When Thomas later informed Doe 1 that Thomas's toilet "stopped working all the way" on December 26, 2021, Doe 1 said he "would put a work order in because Agular may have forgot." *Id*.

Thomas offers no specific allegations that Doe 1 acted (or failed to act) in a way that caused Thomas to be deprived of his Eighth Amendment rights. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer*, 844 F.2d at 633. Thomas alleges that Doe 1 explained Agular submitted a work order for Thomas's plumbing issues during Doe 1's first encounter with Thomas. At his second exchange with Thomas, Doe 1 said he would submit a work order just in case Agular forgot to. Thomas does not allege any further interactions with Doe 1.

The Complaint does not include allegations that Doe 1 demonstrated a subjective mental state of "deliberate indifference" toward Thomas's circumstances either. Deliberate indifference requires more than negligence. *See Farmer*, 511 U.S. at 835. Yet, Thomas alleges that Doe 1 not only understood that another correctional officer was assisting Thomas, but that Doe 1 also later offered to help.

Therefore, Thomas fails to state a claim upon which Section 1983 relief can be granted as to Defendant Doe 1 because Thomas does not set forth any individualized allegations of wrongdoing or deliberate indifference by Doe 1. For these reasons, the Court dismisses the portions of Thomas's Complaint related to Doe 1 per 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), but grants Thomas leave to amend his Complaint should he choose to.

### 3. Defendant John Doe 2

Taking the allegations contained in the Complaint as true, Thomas sufficiently alleges that CDCR Correctional Officer John Doe 2 learned of the conditions of Thomas's cell and failed to act with "deliberate indifference."

Thomas alleges that when he asked to be moved to a different cell on December 26, 2021, Doe 2 replied that the prison would not transfer inmates between cells from

December 20, 2021, until January 12, 2022. ECF No. 1 at 5. Doe 2 said he was not a "regular officer" but would pass the word on to a regular officer "to put in a work order." *Id*. When Thomas insisted on putting in a work order, Doe 2 answered, "I'm about to go home have the next shift due [sic] it." *Id*. Doe 2 added that the next time Thomas saw the plumber, Thomas should ask the plumber to repair his toilet. *Id*. Thomas informed Doe 2 that the plumber refused to fix the toilet without a work order. *Id*. Doe 2 replied, "well it sucks to be you." *Id*. Thomas stated that his "cell smells like a broken sure [sic] pipe." *Id*. Doe 2 laughed and replied, "no it smells like shit." *Id*. Doe 2 added, "if you don't like it don't come to jail." *Id*.

If true, Thomas's allegations demonstrate that Defendant Doe 2 was working as a CDCR correctional officer when he learned of the conditions of Thomas's cell and failed to act with deliberate indifference. *See Swan*, 159 F. Supp. 2d at 1182. Therefore, the Court finds that Thomas's allegations against Doe 2 are sufficient to survive the "low threshold" for screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F. 3d at 1123.

### 4. The CDCR

Although Thomas included the CDCR as a Defendant on the caption of his Complaint, he neither identifies the CDCR as a "Defendant" on the second page nor makes any specific or individualized allegations against the CDCR whatsoever. *See* ECF No. 1. Additionally, the Eleventh Amendment to the U.S. Constitution grants the CDCR immunity from suit for damages because the State of California is not a "person" within the meaning of Section 1983. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984) (holding the Eleventh Amendment bars federal jurisdiction over suits by individuals against a state and its instrumentalities, unless either the state consents to waiving its sovereign immunity or Congress abrogates it); *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989) (dismissing prisoner's Section 1983 suit against the State of Arizona as legally frivolous), *superseded by statute on other grounds as stated in Lopez*, 203 F.3d at 1130; *Brand v. Schubert*, No. 2:16-cv-1811, 2017 WL 531721, at *2 (E.D. Cal.

Feb. 7, 2017) (dismissing Section 1983 claims against the State of California on sovereign immunity grounds pursuant to 28 U.S.C. § 1915A). Therefore, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), the Court dismisses the CDCR as a Defendant in this lawsuit for failing to state a claim, but grants Thomas leave to amend his Complaint should he choose to.

### C. Leave to Amend

Because some of Thomas's claims survived the "low threshold" set for screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), the Court will give Plaintiff the opportunity to either: (1) file a notice with the Court that he wants to proceed with his remaining claims against Agular and Doe 2 only; or (2) file an amended complaint correcting the deficiencies in his original Complaint identified in this Order, if he can. Plaintiff must choose one of these options within forty-five (45) days of the date of this Order. If Plaintiff choses to proceed with only the claims against Defendants Agular and Doe 2 that survived screening, he shall file a notice to that effect and the Court will issue an Order directing the U.S. Marshal to serve Plaintiff's original Complaint on Defendants Agular and Doe 2.

### III. Conclusions and Orders

For the above reasons, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed *In Forma Pauperis*, ECF No. 2.

2. **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's trust the full $350 owed in monthly payments equal to twenty percent (20%) of the average monthly balance in the account for the six months preceding the filing of Thomas's Complaint, only in months where the amount in Plaintiff's account exceeds $10 consistent with 28 U.S.C. § 1915(b)(1). The Court further directs the Secretary to forward such payments to the Clerk of the Court. ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** all claims as to Defendants Doe 2 and the CDCR pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5. **GRANTS** Plaintiff **forty-five (45) days from the date of this Order** to either: (1) file a notice with the Court that he wants to proceed with his remaining claims against Agular and Doe 2 only; or (2) file an amended complaint correcting the deficiencies in his original Complaint identified in this Order, if he can. Any amended complaint MUST BE COMPLETE BY ITSELF, without reference to Plaintiff's original Complaint. If Plaintiff files an amended complaint, any defendants, claims, or information NOT INCLUDED IN THE AMENDED COMPLAINT WILL BE WAIVED even if the information was in the original Complaint. *See* CivLR 15.1; *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted) ("All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived.").

**SO ORDERED**.

Dated:  August 12, 2022

_____
Hon. Robert S. Huie
United States District Judge