UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM H. THOMAS,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>AGUILAR, CORRECTIONAL OFFICER,<br><br>　　　　　　　　　　Defendant. | Case No.: 22-cv-0979-RSH-DEB<br><br>**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[DKT. NOS. 38, 51]** |

This Report and Recommendation is submitted to United States District Judge Robert S. Huie pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(e).

## I.　　BACKGROUND

Plaintiff William H. Thomas, a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), is proceeding pro se with a First Amended Complaint pursuant to 42 U.S.C. § 1983. Thomas alleges Defendant Correctional Officer Aguilar violated his Eighth Amendment rights by failing to timely respond to a broken toilet in Thomas's cell. Dkt. No. 5.[1]

---

[1] The Court screened the First Amended Complaint ("FAC") and found Thomas plausibly alleged an Eighth Amendment violation against Aguilar. Dkt. No. 6. Thomas subsequently moved for leave to file a Second Amendment Complaint, which the Court granted, but only

1

Before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 38, 51. Thomas and Aguilar oppose the other's motion, and each has replied.

For the reasons discussed below, the Court recommends **GRANTING** Aguilar's Motion for Summary Judgment and **DENYING** Thomas's Motion for Summary Judgment.

## II.    LEGAL STANDARDS

Summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could find for the nonmoving party. *Id.*

"In ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (quoting *Anderson*, 477 U.S. at 255). Courts may not weigh evidence or make credibility determinations. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). Courts also "may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (citation omitted).

"When presented with cross-motions for summary judgment, we review each motion for summary judgment separately, giving the nonmoving party for each motion the benefit of all reasonable inferences." *Comcast of Sacramento I, LLC v. Sacramento Metro. Cable Television Comm'n*, 923 F.3d 1163, 1168 (9th Cir. 2019) (quoting *Center for Bio-Ethical Reform Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).

Courts liberally construe pro se prisoner filings and "avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (citation

---

to allow Thomas to correct the dates of the alleged events and the spelling of Aguilar's name. Dkt. Nos. 24, 25, 27, 33. Thomas, however, did not file the Second Amended Complaint. The FAC, therefore, remains the operative complaint.

omitted). "This rule exempts *pro se* inmates from *strict* compliance with the summary judgment rules, but it does not exempt them from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (citation omitted) (emphasis in original).

### III.   FACTUAL BACKGROUND[2]

At all relevant times, Plaintiff Thomas was an inmate at Calipatria State Prison, where Defendant Aguilar was a correctional officer. Dkt. No. 38-3 at 27; Dkt. 38-4 at 1.[3]

Thomas, who did not have a cellmate, alleges the toilet in his cell began malfunctioning on December 18, 2021, when it required multiple flushes to clear. Dkt. 38-3 at 31-32. Thomas alleges he informed Aguilar and another officer about the problem that same day. *Id.* at 38. Thomas also believes he reported the issue to a gun tower officer, who said he would put in a work order. *Id.* at 39. This was not a major issue to Thomas, however. *Id.* at 51 ("That's nothing. That's not bad. As long as it goes down, you know.").

On December 27, 2021, Thomas's toilet stopped flushing altogether. *Id.* at 34. The next day, Thomas reported the malfunction to a second shift officer and then to Aguilar who advised Thomas to "ask the people who walk around. There's plumbers in there." *Id.* at 35, 44. Aguilar also said he would place a work order. *Id.* at 35.

Thomas also reported the problem to a plumber, who said he could not enter Thomas's cell due to COVID-19. *Id.* at 46.

On January 1, 2022, Thomas discussed the toilet problem with a second watch officer and then with Aguilar (who worked the third watch). *Id.* at 45–46. Thomas told Aguilar his cell smelled "like a porta pottie" and requested a different cell. *Id.* at 36. Aguilar

---

[2] Unless otherwise noted, this Factual Background is based on Thomas's deposition testimony. Dkt. No. 38-3.

[3] All page citations are to the numbers affixed by the Court's CM/ECF system.

responded he would not request a different cell but told Thomas he would submit a work order. *Id.*[4]

Beginning January 2, 2022, Thomas complained about his toilet "every day" (*id.* at 46–47), but Aguilar was not on duty on either January 2nd or January 3rd. Dkt. No. 51-1 at 7. Aguilar submitted a work order upon his return to duty on January 4th. Dkt. No. 38-3 at 36; Dkt. No. 51-1 at 10. Thomas did not speak to Aguilar about his toilet again after January 4th. Dkt. No. 38-3 at 48, 72. Thomas's toilet was repaired on January 11th or 12th. *Id.* at 36; Dkt. No. 38-5 at 10.

Feces accumulated in Thomas's cell toilet when it would not flush, and Thomas attempted to suppress the smell with mixed results by covering the commode with a towel. *Id.* at 51–52. Thomas also improvised by urinating in a cup and removing his solid waste with a bag. *Id.* at 55. At the suggestion of another inmate, Thomas poured a bucket of water into the toilet, which "splattered feces everywhere around my living area so I had to clean that up." *Id.* at 56. Thomas makes no claim in either his deposition or summary judgment pleadings, however, that Aguilar knew about these improvisations or whether they occurred before Aguilar submitted a work order on January 4th.

While the toilet in Thomas's cell would not flush, Thomas had periodic access to other prison toilets, including in the yard (where Thomas spent two hours per day, *id.* at 56, 62), the day room (where Thomas spent two hours per day and had access to a urinal, *id.* at 57, 62), the law library, the medical unit, and the church (*id.* at 55, 58–59). Thomas also spent seven and a half hours per day working outside his cell as an "ADA worker/porter/critical worker." *Id.* at 65.[5]

---

[4] The undisputed evidence establishes Aguilar had no independent authority to transfer inmates to a different cell. Dkt. No. 38-3 at 45, 74; Dkt. No. 38-4 at 2.

[5] In a declaration submitted with his opposition, Thomas states, "On average I get two hours a day out the cell. That's 22 hours a day in the cell." Dkt. No. 46 at 10. Aguilar "objects to, and requests the Court disregard," this statement because it is inconsistent with Thomas's prior deposition testimony. Dkt. No. 53 at 5. In his deposition six months before

Except for headaches he treated with Advil (*id.* at 87), Thomas suffered no physical injuries from the broken toilet (*id.* at 88 (Q: "[D]id you ever get any medical treatment from a medical professional . . . based on the broken toilet?" A: "No. Because . . . it's not really a physical injury.")). Instead, the main injuries Thomas claims he suffered are humiliation, embarrassment, and fear of future medical problems. *Id.* at 85, 88–89.[6]

---

this declaration, Thomas testified he worked outside his cell seven and a half hours per day and had two hours per day of both dayroom and yard time. Dkt. No. 38-3 at 56, 61–62, 64–65. The Court sustains Aguilar's objection and will not consider Thomas's statement regarding spending only two hours outside of his cell in deciding Aguilar's Motion for Summary Judgment. *See Ransom v. Greenwood*, 288 F. App'x 396, 397 (9th Cir. 2008) ("The district court properly granted summary judgment . . . because [the pro se plaintiff's] sham affidavit contradicted his prior deposition testimony and therefore could not be used to defeat the motion for summary judgment."); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543–44 (9th Cir. 1975) (holding an affidavit contradicting earlier deposition testimony could not be used to create an issue of fact and avoid summary judgment).

[6] In his Motion, Thomas expresses concern regarding "a lump growing in my left forarm [sic]" that he "believe[s]" "could have been caused by smelling[,] breathing[,] eating[,] drinking[,] and sleeping in a cell that retained a toxic smell for almost 3 months." Dkt. No. 51 at 16. Thomas also attaches "a medical report of a tumur [sic] in my left forarm [sic] that may have been caused by stress and living conditions at Calipatria state prison." *Id.* Aguilar objects to the Court considering these statements, arguing Thomas is not qualified to provide an expert medical opinion. Dkt. No. 53 at 4. The Court overrules Aguilar's objections. *See Fraser v. Goodale,* 342 F.3d 1032, 1036–37 (9th Cir. 2003) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.") (quoting *Block v. City of Los Angeles,* 253 F.3d 410, 418–19 (9th Cir. 2001)). Aguilar also summarily objects to Plaintiff's following statements: (1) "Defendant is a wrongdoer of my United States Constitutional right," and (2) "The broken toilet did rise to the level of unconstitutional deprivation." Dkt. No. 53 at 5 (citing Dkt. No. 51 at 1, 3). The Court, again, overrules Aguilar's objections. *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("Statements in declarations based on . . . improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered on a motion for summary judgment. Objections on any of these grounds are simply superfluous in this context.") (citation omitted) (emphasis in original).

On January 3, 2022, Thomas submitted a Form 601-1 Grievance regarding the broken toilet that requested maintenance and $80,000. Dkt. No. 38-5 at 7–8. On January 28, 2022, CDCR issued an Office of Grievances Decision granting the appeal, stating "Claimant's toilet was repaired on January 12, 2022." *Id.* at 10. The decision did not mention Thomas's $80,000 demand. The decision advised Thomas he could appeal the decision using a "CDCR Form 602-2" if he was dissatisfied with the response. *Id.* A Form 602-2 was not attached to the decision, however (Dkt. Nos. 38-5; 38-6), and Thomas did not submit one until October 8, 2023, well after he filed this case (Dkt. No. 51-1 at 13–14).

## IV.   DISCUSSION

Aguilar moves for summary judgment on three grounds: (1) Thomas has not exhausted administrative remedies; (2) the conditions Thomas faced did not violate the Eighth Amendment; and (3) Aguilar is entitled to qualified immunity. Dkt. No. 38.

Thomas cross-moves for summary judgment, seeking the $80,000 requested in his grievance. Dkt. No. 51 at 1. Thomas's motion argues: (1) he has exhausted available administrative remedies; (2) the conditions he faced violated the Eighth Amendment's prohibition against cruel and unusual punishment; and (3) Aguilar is not entitled to qualified immunity. Dkt. No. 51.[7]

### A. Exhaustion

The parties dispute whether Thomas exhausted his administrative remedies. As discussed below, the undisputed facts submitted with the summary judgment briefing establish Thomas exhausted available administrative remedies.

### 1. Legal Standards

The Prison Litigation Reform Act ("PLRA") "mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th

---

[7] Aguilar's opposition to Thomas's Motion for Summary Judgment erroneously refers to "Officer Aguilar" as "Officer Garcia." Dkt. No. 53 at 2–5, 7–8.

Cir. 2014) (en banc) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). Inmates cannot satisfy the PLRA's exhaustion requirement "by exhausting available remedies during the course of the litigation." *Akhtar v. Mesa*, 698 F.3d 1202, 1210 (9th Cir. 2012) (quoting *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam)). But a "prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 578 U.S. 632, 636 (2016) (quoting 42 U.S.C. § 1997e(a)).

A defendant seeking summary judgment for failure to exhaust bears the initial burden to establish "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172 (citation omitted). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Id.* at 1171 (quoting *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005)). Once that showing is made, the burden shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172 (citation omitted). But "the ultimate burden of proof" remains with the defendant. *Id.*

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56 [of the Federal Rules of Civil Procedure]." *Albino*, 747 F.3d at 1166. But "if material facts are disputed, summary judgment should be denied," and "the district judge may decide disputed questions of fact in a preliminary proceeding." *Id.* at 1166, 1168.

### 2. CDCR's Grievance System

CDCR provides a procedure for inmates to administratively grieve and appeal any "policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare." Cal. Code Regs. tit. 15, § 3481(a).

CDCR's grievance process has two levels of review. *Id*. First, the inmate must timely submit a written grievance to the Institutional Office of Grievances ("OOG") using CDCR Form 602-1. *Id.* § 3482(a)(1), (b)(1), and (c)(1). Second, an inmate must timely appeal the

OOG's decision to the Office of Appeals ("OOA") using CDCR Form 602-2. *Id.* § 3484(a)–(b). Generally, "[c]ompletion of the review process by the [OOA] resulting in a decision of 'denied,' 'granted,' 'no jurisdiction,' 'identified as staff misconduct,' 'pending legal matter,' or 'time expired' . . . constitutes exhaustion of all administrative remedies available to a claimant within the department." *Id.* § 3485(*l*)(1).

### 3. Thomas's Grievance

On January 3, 2022, Thomas submitted a grievance related to the allegations in his complaint on CDCR Form 602-1. Dkt. No. 38-5 at 7–8. Thomas's grievance complained of plumbing problems with his sink and toilet, resulting in "breathing trouble" and migraines. *Id.* at 7. The grievance also stated Thomas reported these issues to prison staff but did not identify any by name. *Id.* Thomas requested maintenance and $80,000. *Id.* at 8.

On January 28, 2022, the OOG approved Plaintiff's claim and noted, "Claimant's toilet was repaired on January 12, 2022." Dkt. No. 38-5 at 10–11. But the OOG did not address Thomas's monetary demand. *Id.* The decision advised Plaintiff if "you are dissatisfied with this response you may appeal this decision by mailing the CDCR Form 602-2 included in this response to the California Department of Corrections and Rehabilitation, Office of Appeals. Do not resubmit this claim to the Office of Grievances." *Id.* at 10. Aguilar's Motion attaches the OOG's decision, but the referenced 602-2 form is not contained in the exhibit. *See id.* at 10–11.

### 4. Analysis

Exhausting CDCR's grievance process generally requires inmates to complete two levels of review (i.e., timely submitting both Form 602-1 and Form 602-2). *See* Cal. Code Regs. tit. 15, §§ 3481–3485. Thomas submitted and received a response to his Form 602-1 grievance, thus completing the first level of review. There is, however, no record of Thomas timely completing the second level review (i.e., Form 602-2). Dkt. No. 38-6.[8]

---

[8] Thomas's Motion for Summary Judgment contains a CDCR 602-2 form he submitted on October 8, 2023 (about a year after Thomas filed his FAC), which the OOA rejected as untimely on November 1, 2023. Dkt. No. 51-1 at 13–14.

Aguilar has, therefore, met his initial burden to establish "there was an available administrative remedy," and Thomas "did not exhaust that available remedy." *Albino*, 747 F.3d at 1172 (citation omitted).

Thomas's responsive declaration states COVID-19 policies in place at the relevant time (i.e., January 2022) "prohibited second-level reviews" using Form 602-2. Dkt. No. 46 at 3, 6, 16–18.[9] Thomas further declares "CDCR was under emergency Coved [sic] 19 rules to stop the spread of coved [sic] 19[.] Calipatria State Prison diclined [sic] to answer 602-2 forms at the 2nd level and made clear the only level after the first level is the final level[.] [T]he 602-3 form was sent to me[.] I filled it out and sent it in." *Id.* at 18.[10] Consistent with Thomas's claim of a temporary Form 602-2 suspension during COVID-19, the decision on Thomas's Form 601-1 attached to Aguilar's Motion does not include Form 602-2 despite the pre-printed boilerplate language stating one is "included in this response." Dkt. No. 38-5 at 10–11.

If credited as true, Thomas's declaration establishes he exhausted all administrative remedies available to him at the time, and further remedies were unavailable due to

---

[9] Thomas also alleges CDCR's administrative process could not award him the monetary relief he sought. Dkt. No. 46 at 2–3. This does not relieve Thomas of his obligation to fully exhaust his administrative remedies. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) (An inmate must complete a prison administrative process "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."); *Woodford*, 548 U.S. at 85 ("[A] prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process.") (citation omitted).

[10] The summary judgment record contains two CDCR 602-3 forms submitted by Thomas relating to this same grievance. Dkt. No. 38-6; Dkt. No. 46 at 21. Thomas's Motion attaches a Form 602-3 submitted on February 28, 2022, which the OOA received on March 9, 2022. Dkt. No. 46 at 21. Aguilar's Motion attaches a Form 602-3 Thomas submitted on August 24, 2022, and the OOA received on August 30, 2022. Dkt. No. 38-6. The OOA responded to Thomas on July 27, 2023. Dkt. No. 46 at 19 ("Subsequent to your filing, this Office has confirmed that the remedy has been fully implemented. This matter is therefore fully resolved.").

COVID-19 restrictions. *See Williams v. Paramo,* 775 F.3d 1182, 1192 (9th Cir. 2015) (exhaustion is excused when "prison officials inform the prisoner that he cannot file a grievance"); *Strizich v. Palmer,* No. 23-35082, 2024 WL 3493294, at *2 (9th Cir. July 22, 2024) ("[A]n administrative remedy is considered unavailable for PLRA purposes when a prisoner has been 'reliably informed' that the remedy is 'not available to him.'") (quoting *Albino,* 747 F.3d at 1173). The Court finds Thomas "carried his burden to come forward with sufficient evidence that, if unrebutted, 'show[s] that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.'" *Strizich,* 2024 WL 3493294, at *2; *cf. Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016) (finding inmate plaintiff did not meet his burden when he "did not identify any actions that prison staff took that impeded his ability to exhaust his administrative remedies, nor did he otherwise explain why he failed to comply with the administrative process").[11]

Neither Aguilar's opposition nor his two replies submit evidence disputing Thomas's declaration asserting the 602-2 appeal requirement was suspended during the COVID-19 emergency. *See* Dkt. No. 48 at 5–7, Dkt. No 52 at 2. Instead, Aguilar repeats the regulations. Dkt. No. 48 at 7.

Aguilar, therefore, has failed to carry his "ultimate burden" of proving Thomas failed to exhaust an "available" administrative remedy. *Albino,* 747 F.3d at 1172, 1177; *see also Williams,* 775 F.3d at 1192 ("defendants may not simply rely on the existence of an administrative review process to overcome a prisoner's showing that administrative remedies were not available to him"). Thomas's evidence establishing he exhausted all

---

[11] In one reply, Aguilar argues Thomas "provides no evidence to support his [COVID-19] allegation . . . ." Dkt. No. 48 at 6–7. Thomas's opposition, however, contains a declaration made under penalty of perjury (Dkt. No. 46), and declarations are a form of evidence courts consider on summary judgment. *Ammar Harris, Plaintiff v. F. Dreesen, et al.*, Defendants, No. 2:22-CV-01231-JAD-EJY, 2024 WL 3620830, at *1 (D. Nev. Aug. 1, 2024) ("On a motion for summary judgment, a court must treat an affidavit by an individual with personal knowledge as a fact that is genuinely disputed.") (citation omitted).

available remedies is undisputed. The Court, therefore, finds that Thomas has exhausted his administrative remedies.[12]

### B. Eighth Amendment

Aguilar also argues he is entitled to summary judgment because Thomas's "broken toilet does not rise to the level of an unconstitutional deprivation," and Aguilar "did not disregard any risk to [Thomas]'s safety." Dkt. No. 38-2 at 6, 12–17. Thomas opposes and cross-moves for summary judgment, arguing a broken toilet "filled with feces and urin (sic) for 17 days" is an Eighth Amendment violation. Dkt. No. 51 at 1.[13]

---

[12] Aguilar also unpersuasively argues Thomas failed to exhaust his claim because Thomas failed to name Aguilar in his 602-1 grievance. CDCR Regulations require the claimant's grievance to "describe all information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge[.]" Cal. Code Regs. tit. 15, § 3482(c)(2). Although Thomas's grievance does not identify Aguilar (or any other officer) by name, it does state Thomas "talk[ed] to 2nd and 3rd watch officers about my [plumbing] problem[s]." Dkt. No. 38-5 at 7. It also is undisputed that Aguilar worked the third watch (during the relevant period). Dkt. No. 51-1 at 5. Therefore, the reference to notifying second and third watch staff about the broken toilet placed prison officials on notice of the alleged deprivation and the opportunity to resolve it. *See Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) ("The grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'") (quoting *Jones v. Bock,* 549 U.S. 199, 219 (2007)). Moreover, by granting Thomas's claim and substantively deciding Thomas's grievance, prison officials ignored any alleged procedural defect. *See id.* at 658 ("[W]e hold that a prisoner exhausts 'such administrative remedies as are available,' under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process.") (quoting 42 U.S.C. § 1997e(a)).

[13] Thomas's cross-motion also argues a Fourteenth Amendment violation. Dkt. No. 51 at 1. The operative complaint in this case, however, alleges only an Eighth Amendment claim. Dkt. No. 5. The Court, therefore, evaluates Thomas's claim under the Eighth Amendment. *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) ("Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause.") (citation omitted).

The Eighth Amendment is violated by "wanton and unnecessary infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). To prevail on an Eighth Amendment conditions of confinement claim, the plaintiff must show (1) "the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation[,]" and (2) "the prison official acted 'with a sufficiently culpable state of mind.'" *Johnson v. Lewis,* 217 F.3d 726, 731 (9th Cir. 2000) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The first element is an objective test, and the second element requires a subjective analysis. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Court finds Thomas's allegations satisfy neither the objective nor the subjective element.

### 1. <u>Objective Element</u>

The objective element requires the plaintiff "to objectively show that he was deprived of something 'sufficiently serious.'" *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834). "A deprivation is sufficiently serious when the prison official's act or omission results 'in the denial of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Farmer*, 511 U.S. at 834).

Prison conditions may be restrictive and harsh, but officials have the duty to provide prisoners with "humane conditions of confinement." *Farmer*, 511 U.S. at 832; *see also Johnson,* 217 F.3d at 731 ("Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.") (citation omitted). The Court must evaluate the "circumstances, nature, and duration" of the deprivation. *Johnson,* 217 F.3d at 731. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Although "toilets can be unavailable for some period of time without violating the Eighth Amendment," *Johnson,* 217 F.3d at 733, "subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir.

1995) (citations omitted); *see also Hoptowit v. Ray*, 682 F.2d 1287, 1259 (9th Cir. 1982) ("The more basic the particular need, the shorter time it can be withheld.").

In his deposition, Thomas testified the toilet in his cell started having problems on December 18, 2021, when it required multiple flushes to clear. Dkt. No. 38-3 at 32, 51. This condition does not implicate the Eighth Amendment, as Thomas acknowledges. *Id.* at 51 ("Honestly, . . . I'm okay with that.").

Thomas testified his toilet stopped flushing altogether on December 27th. *Id.* at 34. Thomas testified he informed Aguilar about the broken toilet the next day, December 28th. *Id.* at 35. Aguilar placed a work order to repair Thomas's toilet on January 4, 2022. Dkt. No. 51-1 at 10. Although Thomas's toilet was not repaired until January 11th or 12th (Dkt. No. 38-3 at 36; Dkt. No. 38-5 at 10), any culpable inaction by Aguilar ended when he submitted a work order on January 4th. In evaluating Aguilar's personal Eighth Amendment liability, therefore, the Court evaluates whether Thomas suffered an objectively "extreme deprivation" during the seven-day period between December 28th and January 4th. *Farmer*, 511 U.S. at 844 (prison officials are not liable "if they responded reasonably to the risk, even if the harm ultimately was not averted").

Thomas "found other places to use the rest room" until the toilet in his cell was fixed. Dkt. No. 46 at 8. These other facilities included a toilet in the yard (where Thomas spent two hours per day but did not use the toilet there to defecate because of safety concerns) (Dkt. No. 38-3 at 55–56, 62, 64), a urinal in the day room (where Thomas spent two hours per day) (*id.* at 57, 62, 64), and the toilets in the chapel, library, and medical unit (*id.* at 55, 58–59). Thomas also worked seven-and-a-half-hour shifts outside his cell as a "porter and an ADA worker." *Id.* at 64–65, 67.

Regarding the conditions in his cell, Thomas's primary complaint concerns a foul odor that emanated from the clogged cell toilet. Dkt. No. 38-3 at 36, 46. As a result, Thomas claims he ate less (because he had to eat meals in his cell), had difficulty sleeping, and developed headaches he treated with Advil. *Id.* at 53–54, 61, 63–64, 87. Thomas also testified he urinated in a cup and poured the urine into the sink, removed his solid waste in

a bag, and cleaned his feces from the cell floor when another inmate's suggestion to pour a bucket of water into the toilet backfired. *Id.* at 55–56.

Although Thomas suspects the odor may have exacerbated his breathing difficulties from a prior case of COVID-19, *id*. at 60, he denies any physical injury. *Id.* at 88 (Q: "[D]id you ever get any medical treatment from a medical professional . . . based on the broken toilet?" A: "No. Because . . . it's not really a physical injury."). Instead, the main injury Thomas claims is emotional, including fear of future medical problems. *Id.* at 85, 88–89.

Although the conditions Thomas endured were undoubtedly inconvenient and unpleasant, they were not objectively "extreme deprivations", *Hudson*, 503 U.S. at 9, that "pos[ed] a substantial risk of serious harm" or "an excessive risk to [his] health and safety." *Farmer,* 511 U.S. at 834, 837. Thomas: (1) was the only one in his cell; (2) was outside his cell for eleven and a half hours per day; (3) had access to and used other prison bathroom facilities; and (4) suffered no physical injuries. The Court, therefore, finds the facts of this case do not meet the objective element of the Eighth Amendment.

### 2. **Subjective Element**

The Court also finds the facts here do not satisfy the subjective element of the Eighth Amendment, which requires a plaintiff to establish the prison official inflicted the deprivation with a "sufficiently culpable state of mind," that is, with "'deliberate indifference' to [the plaintiff's] health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)); *see also Clem v. Lomeli,* 566 F.3d 1177, 1182 (9th Cir. 2009) ("It is well settled that '[d]eliberate indifference occurs when [an] official acted *or failed to act* despite his knowledge of a substantial risk of serious harm.'") (quoting *Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 957 (9th Cir. 2008)). "Whether an official possessed such knowledge 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . .'" *Johnson*, 217 F.3d at 734 (quoting *Farmer*, 511 U.S. at 842).

Although Aguilar declares he first learned Thomas's toilet had stopped flushing on January 4, 2022 (i.e., the same day he submitted a work order), Dkt. No. 38-4 at 1–2, the

Court assumes the truth of Thomas's testimony for summary judgment purposes. *Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citation omitted). According to Thomas, he first informed Aguilar his toilet would not flush on December 28, 2021. Dkt. No. 38-3 at 35. Thomas complained to Aguilar again on January 1, 2022, and January 4, 2022. *Id.* at 36, 71.

Thomas also complained to multiple other officers and a plumber during this same timeframe. *Id.* at 42 (third watch officer informed on December 27th); *id.* at 44 (second watch officer informed on December 28th); *id.* at 46 (plumber informed sometime before January 1st); *id.* at 45 (second watch officer informed on January 1st); *id.* at 46–47 (complained daily to first and second watch officers after January 1st). Yet it was Aguilar (and not the others) who ultimately placed the work order to repair Thomas's toilet on January 4th. Dkt. No. 51-1 at 10.

Thomas does not allege he informed Aguilar of the more extreme unpleasantries he experienced (e.g., urinating in a cup and disposing of his waste in a bag). Instead, Thomas only alleges he informed Aguilar that his toilet had feces in it and his cell smelled "like a porta pottie," causing headaches and difficulty sleeping. Dkt. No. 38-3 at 36; Dkt. No. 46 at 24. This is insufficient to place Aguilar on notice of "an excessive risk to [Thomas's] health or safety." *Farmer*, 511 U.S. at 837.

Based on the surrounding circumstances and having observed Aguilar's demeanor, Thomas himself concluded Aguilar lacked a culpable state of mind. Instead, Thomas concluded Aguilar "probably forgot" to place the work order when Thomas first reported it on December 28th. *Compare* Dkt. No. 38-3 at 35 ("Well, Officer Aguilar told me he was going to put a work order in, but he probably forgot. . . . [H]e ended up leaving for a period of time. And, then, I don't know if he went to another building or . . . took his vacation days . . . but when I did see him again, he said that he'll put the work order in.") *with Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."). The record establishes Aguilar was, in fact, off duty on

January 2nd and 3rd and did place the work order upon his return to duty on January 4th. Dkt. No. 51-1 at 7, 10.

In sum, Thomas has presented insufficient evidence from which a jury could conclude Aguilar knew of and deliberately disregarded an excessive risk to Thomas's health and safety. The subjective element, therefore, is not met. *Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

### C. Qualified Immunity

Aguilar argues he is entitled to qualified immunity because he "acted reasonably by immediately acting to have Plaintiff's toilet fixed." Dkt. No. 38-2 at 18. Aguilar further argues "cases involving broken toilets where courts have found constitutional violations are distinguishable from this case." *Id.* at 19. The Court agrees and finds that, even if the objective and subjective Eighth Amendment elements are met, Aguilar is entitled to qualified immunity.

Qualified immunity shields government actors from civil liability under 42 U.S.C. § 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards,* 566 U.S. 658, 664 (2012)). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)). Government officials "are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Rivas-Villegas*, 595 U.S. at 5 (quoting *Brosseau v.*

*Haugen*, 543 U.S. 194, 198 (2004)). "Although there need not be a Supreme Court or circuit case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

The Supreme Court also recognizes "officials can be on notice that their conduct violates established law even in novel factual situations." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

No precedent clearly establishes the Eighth Amendment is violated under the facts Thomas alleges here. To the contrary, the Supreme Court and Ninth Circuit cases finding an Eighth Amendment violation for unsanitary conditions of confinement (1) involve deprivations significantly more egregious than those Thomas alleges here, and (2) involve depraved conditions wantonly and unnecessarily inflicted by the jailers. *See Taylor v. Riojas,* 592 U.S. 7, 7–8 (2020) (Plaintiff was held in "shockingly unsanitary cells" over a six-day period; the first "was covered, nearly floor to ceiling, in 'massive amounts' of feces: all over the floor, the ceiling, the window, the walls, and even 'packed inside the water faucet.'"; the defendant officers then moved plaintiff to "a second, frigidly cold cell, which was equipped with only a clogged drain in the floor to dispose of bodily wastes. [Plaintiff] held his bladder for over 24 hours, but he eventually (and involuntarily) relieved himself, causing the drain to overflow and raw sewage to spill across the floor. Because the cell lacked a bunk, and because [plaintiff] was confined without clothing, he was left to sleep naked in sewage.") (citation omitted); *Hope*, 536 U.S. at 738 (defendant officers "handcuffed [Plaintiff] to [a] hitching post" and "knowingly subjected him to a substantial risk of physical harm, to unnecessary pain caused by the handcuffs and the restricted position of confinement for a 7–hour period, to unnecessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation"); *Johnson*, 217 F.3d at 732 (Defendant

officers "forced [plaintiffs] to lie on the ground [in 22 degree weather] in whatever clothing they had been wearing . . . . When [plaintiffs] needed to urinate, the guards allowed them to get to their knees, crawl a few feet from where they lay, and relieve themselves on the ground. Because of their close proximity to each other, inmates sometimes urinated on their neighbors; even when they did not, the urine sometimes pooled and ran onto other inmates." Thereafter, the defendant officers provided "inedible food and inadequate drinking water for four days;" failed to provide "adequate access to toilets [for plaintiffs] to avoid soiling themselves;" and prohibited plaintiffs from "clean[ing] themselves thereafter.").

The contrast between the facts of this case and those cited above also confirm Aguilar did not violate any general constitutional rule that applies with "obvious clarity to the specific conduct in question." *Hope*, 536 U.S. at 741. To the contrary, the general constitutional principles (i.e., "extreme deprivations," *Hudson*, 503 U.S. at 9, and a "wanton and unnecessary infliction of pain," *Rhodes,* 452 U.S. at 347) do not exist here.

In sum, no controlling authority and no general constitutional rule that applies with obvious clarity establishes a correctional officer like Aguilar (who has no alleged maintenance duties, no authority to assign or move cells, and no general supervisory responsibilities) is constitutionally and personally liable under the facts alleged here. Aguilar, therefore, is entitled to qualified immunity.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting Defendant's Motion for Summary Judgment (Dkt. No. 38); and (3) denying Plaintiff's Motion for Summary Judgment (Dkt. No. 51).

**IT IS ORDERED** that no later than **August 26, 2024**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties by **September 3, 2024**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: August 12, 2024.

Honorable Daniel E. Butcher
United States Magistrate Judge